UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| JEFFREY SACKS, Petitioner, v. KYPRIOS, Respondent. | ) | No. 1:24-cv-02184-JMS-KMB |
| FEDERAL BUREAU OF PRISONS, Interested Party. | ) | |

**ORDER DENYING HABEAS PETITION AND DIRECTING ENTRY OF FINAL JUDGMENT**

Jeffrey Sacks filed a petition for writ of habeas corpus under 28 U.S.C. § 2241 while he was housed at the Volunteers of America ("VOA") residential reentry center ("RRC") in Indianapolis, Indiana. Dkt. 1. He has since finished serving his federal sentence, been released from Bureau of Prisons ("BOP") custody, and begun serving his term of supervised release. The Court ordered him to show cause why his petition should not be dismissed for failure to prosecute based on his failure to update his address with the Court after he moved to supervised release. Dkt. 13. He responded, explaining that even though he was now serving his term of supervised release, his address had not changed. Dkt. 14. Accordingly, the order to show cause is **discharged**, and the Court will address the merits of his habeas petition. For the reasons stated below, the petition is **denied**.

## I. Legal Standard

The Attorney General, through the BOP, is responsible for administering a federal prisoner's sentence, including the computation of sentence credit. *United States v. Wilson*, 503 U.S. 329, 335 (1992); *United States v. Walker*, 917 F.3d 989, 993-94 (7th Cir. 2019). An inmate can challenge the calculation of his sentence, including time credits, in a petition for writ of habeas corpus under § 2241. *Setser v. United States*, 566 U.S. 231, 244 (2012); *Preiser v. Rodriguez*, 411 U.S. 475, 487 (1973). A federal court may issue a writ of habeas corpus only if it finds the applicant "is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3). "A necessary predicate for the granting of federal habeas relief [to a petitioner] is a determination by the federal court that [his] custody violates the Constitution, laws, or treaties of the United States." *Rose v. Hodges*, 423 U.S. 19, 21 (1975).

## II. Factual and Legal Background

In January 2021, Mr. Sacks was sentenced to 70 months in prison and 4 years of supervised release after pleading guilty to conspiracy to distribute controlled substances. *United States v. Sacks*, No. 1:20-cr-97-JRS-TAB-22, dkt. 905 (S.D. Ind. Jan. 8, 2021). He arrived in BOP custody on March 16, 2021, making his full-term release date with no credits January 14, 2027. Dkt. 7-1 at 7.[1]

[1] Mr. Sacks's original petition included argument about how many good-conduct time credits and First Step Act credits he should have earned, but he did not explain how he reached those figures or include any evidence to show how many good-conduct time credits and FSA credits he had actually earned, so the Court disregards that section of argument. *See* dkt. 1 at 14; *Greenbank v. Great Am. Assurance Co.*, 47 F.4th 618, 629 (7th Cir. 2022) ("We have made clear that perfunctory and underdeveloped arguments, and arguments that are unsupported by pertinent authority are waived."). The sentence calculation figures—including the amount of First Step Act and good-conduct time credits Mr. Sacks earned—in this section come from the records attached to the declaration from Fred Roshto that the BOP submitted with its response to Mr. Sacks's petition. Dkt. 7-1 at 4–16. Mr. Sacks does not object to any of these figures in his reply and response to the Court's Order to show cause. *See* dkts. 9, 14. Mr. Sacks does ask the Court to disregard the declaration itself, but the Court declines to do so. First, his generalized accusations of perjury are baseless. *See* dkt. 9 at 19–20. Second, he argues that the perjury certification in the declaration does not

Inmates can earn 54 days of good-conduct time credits per year, which serve to reduce the length of their term of imprisonment. 18 U.S.C. § 3624(b)(1). As of the time the BOP responded to Mr. Sacks's habeas petition, he had earned 121 days of good-conduct time credits. Dkt. 7-1 at 7. He was still earning good-conduct time credits, and, assuming that he continued to earn all available good-conduct time credits, he would earn a total of 274 such credits during his sentence, which moved his estimated release date to April 15, 2026. *Id*.

Eligible inmates can also earn up to 15 days of credits per month under the First Step Act ("FSA") by completing programming and other activities. 18 U.S.C. § 3632(d)(4). The first 365 days of those credits can be applied toward early transfer to supervised release, which is effectively a one-year reduction in sentence. 18 U.S.C. § 3624(g)(3). Additional FSA credits earned over the 365-day threshold may be applied toward early transfer to prerelease custody, such as a residential reentry center or home confinement. 18 U.S.C. § 3624(g)(2). Inmates on prerelease custody are still in the BOP's custody, but they are serving their sentence outside a prison. *See, e.*g., 18 U.S.C. § 3624(c)(1)–(2)) (the BOP "shall, to the extent practicable, ensure that a prisoner serving a term of imprisonment spends a portion of the final months of that term . . . under conditions that will afford a reasonable opportunity to adjust and prepare for the reentry of that prisoner into the

include the words "under the laws of the United States" as required by 28 U.S.C. § 1746. *Id.* at 19. The Court, however, finds that the certification sufficient. Section 1746 does not require that the perjury certification exactly quote the statute. Instead, the perjury certification must be "substantially" in the form required by the statue. 28 U.S.C. § 1746. Mr. Roshto's perjury certification substantially complies with § 1746 because it specifically references § 1746, which includes the "under the laws of the United States" language. Mr. Sacks also objects to the certification because it includes the phrase "to the best of my knowledge." Dkt. 9 at 19. But inclusion of that phrase does not make the certification inadequate. *See Bhatia v. Vaswani,* No. 18-CV-2387, 2021 WL 2254963, at *4 (N.D. Ill. June 3, 2021) (collecting cases concluding that including qualifiers like "to the best of my knowledge" do not invalidate a perjury certification under § 1746). Finally, he complains that Mr. Roshto cannot possibly have personal knowledge of everything in the declaration and that his statements are hearsay. Dkt. 9 at 19. But—at least as to the records referred to in this section—Mr. Roshto does not need to have personal knowledge of the facts underlying those records because they are business records, and he has adequately authenticated them. Fed. R. Evid. 803(6).

community," including home confinement and community corrections facilities); 18 U.S.C. § 3624(g)(2) (identifying home confinement and RRCs as types of prerelease custody).

As of December 30, 2024, Mr. Sacks had earned 630 days of FSA credits. Dkt. 7-1 at 9. The first 365 were applied toward early transfer to supervised release, which effectively reduced Mr. Sacks's sentence by a year and brought his projected release date to April 15, 2025. *Id.* at 6, 7, 9. The additional 265 FSA days were available to be applied toward early transfer to prerelease custody, and Mr. Sacks was able to earn more such credits going forward while he was at the VOA. Dkt. 7-1 at 2–3.

Consistent with the BOP's calculation of the end of his sentence, Mr. Sacks was released from BOP custody on April 15, 2025. *See* https://www.bop.gov/inmateloc/ (last visited Aug. 14, 2026). That date was about three and half months after the date on the document the BOP filed showing that he had earned 265 days of FSA credits potentially applicable to early transfer to prerelease custody. Assuming Mr. Sacks earned 15 days of credit for each month he remained at the VOA, that would total a maximum of 60 more days (4 months times 15 days), for a potential total of approximately 325 days of FSA credits potentially available to be applied toward supervised release. As it happened, Mr. Sacks received more than 325 days of time in prerelease custody because he was transferred to the VOA in April 2024, *see* dkt. 7-1 at 2, and was released on April 15, 2025.

In addition to good-conduct time credits and FSA credits, there are two other pathways to shortening an inmate's sentence or obtaining transfer to prerelease custody. As to sentence reductions, under 18 U.S.C. § 3621(e)(2), inmates who complete the BOP's Residential Drug Abuse Program ("RDAP") are eligible to have their sentences reduced by one year. Mr. Sacks was

enrolled in RDAP, but he was expelled because staff concluded that he made inappropriate sexual comments about a staff member. Dkt. 7–1 at 15–16; dkt. 9 at 8–9.[2]

As to opportunities for transfer to prerelease custody, under the Second Chance Act ("SCA"), the BOP has the authority to place inmates in community confinement facilities (such as RRCs) during the final portion of their sentences for up to 12 months:

> The Director of the Bureau of Prisons shall, to the extent practicable, ensure that a prisoner serving a term of imprisonment spends a portion of the final months of that term (not to exceed 12 months), under conditions that will afford that prisoner a reasonable opportunity to adjust to and prepare for the reentry of that prisoner into the community. Such conditions may include a community correctional facility.

18 U.S.C. § 3624(c)(1). The authority to place inmates in community correctional facilities under § 3624(c)(1) "may be used to place a prisoner in home confinement for the shorter of 10 percent of the term of imprisonment of that prisoner or 6 months." 18 U.S.C. § 3624(c)(2). The BOP also has a Nonresidential Drug Abuse Program ("NRDAP"). Under BOP Program Statement 5330.11, Section 2.4.8(b), "Each Warden is strongly encouraged to approve inmates who successfully complete the non-residential drug abuse program for the maximum period of RRC placement." Mr. Sacks began participating in NRDAP while he was incarcerated at FCI Fort Dix. Dkt. 1 at 17. He represents that he could not complete the program because he was transferred to another prison. *Id.* After his transfer, he again applied to enroll in NRDAP, but he did not receive a response. *Id.*

---

[2] The documents attached to the BOP's response to Mr. Sacks's petition show that he was expelled because he made sexual comments *about* a staff member, which comports with Mr. Sacks's narrative of what happened—namely, that he made comments to other inmates, which were later reported back to the staff member. Dkt. 7–1 at 15–16; dkt. 9 at 8–9. In the BOP's response to his petition, counsel stated that he was expelled from RDAP for making sexual comments *to* staff, as opposed to sexual comments *about* staff. Dkt. 7 at 2. Mr. Sacks suggests that counsel lied to the Court in making the statement, dkt. 9 at 9, but the Court disagrees. There is nothing to suggest that counsel did anything other than accidentally misstate the facts. Moreover, the error is harmless because the underlying document showing why Mr. Sacks was expelled from RDAP is in the record, and the Court has reviewed it, along with Mr. Sacks's account of why he was removed from RDAP.

## III. Discussion

Mr. Sacks argues that the BOP improperly calculated his sentence, which resulted him being held in custody too long.[3] He specifically identifies problems with the BOP's handling of the following: (1) good-conduct time credits; (2) FSA credits; (3) time in RRC under the SCA; and (4) time in RRC because of his participation in NRDAP. *See generally* dkts. 1, 9. He has now finished serving his sentence of imprisonment and has been released to supervised release. He contends that, because he was held in custody too long, the Court should subtract any excess time for his term of supervised release as a matter of equity.[4] Dkt. 1 at 17. As explained above, Mr. Sacks's petition involves two kinds of "credits"—credits that potentially could shorten his sentence and credits that potentially could have given him more time in prerelease custody (such as an RRC or home confinement). The Court discusses the two categories separately, below.

### A. Credits Affecting Sentence Length

As explained above, Mr. Sacks was ultimately released from BOP custody on April 15, 2025—almost two years before his sentence would otherwise have concluded—because the BOP

---

[3] Mr. Sacks's petition includes a complaint that the VOA was denying him copies of his medical records. Dkt. 1 at 7. Resolution of that issue would not even indirectly affect the length of Mr. Sacks's confinement, so it is not properly raised in a habeas petition, and the Court does not discuss the issue further. *See Preiser v. Rodriguez,* 411 U.S. 475, 490 (1973) (habeas corpus review is available only where the petitioner is "challenging the fact or duration of confinement"); *Robinson v. Sherrod*, 631 F.3d 839, 840–41 (7th Cir. 2011) ("When there isn't even an indirect effect on duration of punishment . . . , we'll adhere to our long-standing view that habeas corpus is not a permissible route for challenging prison conditions."). In addition, the Court understands that Mr. Sacks named the warden of the VOA as the respondent in this action and not the BOP, but, as explained in the Court's September 4, 2025, Order, he was still in BOP custody when he filed his habeas petition, and the BOP is ultimately responsible for administering his sentence, including determining sentence credits. *See* dkt. 11. Thus, the Court refers to the BOP and its decision in its discussion, not to the warden of the VOA. Needless to say, if the BOP did not err in calculating Mr. Sacks's sentence or determining how much time in prerelease custody he should receive, the VOA also did not violate the law in holding Mr. Sacks in accordance with the BOP's calculations.

[4] Because Mr. Sacks contends that the Court has the ability to deduct time from his term of supervised release, his petition is not moot despite the fact that he has completed his sentence. *See Genovese v. Warden*, No. 2:23-cv-00455-JPH-MKK, dkt. 33 at 3 (S.D. Ind. July 14, 2026) (concluding that inmate's release to supervised release did not moot habeas petition where he argued that the credits he was seeking could be applied to reduce his term of supervised release).

gave him 274 days of good-conduct time credits and reduced his sentence by 365 days based on his earned FSA credits. Mr. Sacks has not identified any error in the BOP's calculation of those credits. The Court also does not understand Mr. Sacks to be claiming entitlement to a sentence reduction for completing RDAP, but because the parties discussed RDAP in their briefing, the Court also notes that Mr. Sacks does not dispute that he is ineligible for the time cut associated with RDAP completion. Thus, he has not shown that the BOP erred in calculating the date he should be released from BOP custody. If the BOP erred at all, the error lay with the BOP's decision about how much time he should spend in prerelease custody, such as an RRC or home confinement, not with its calculation of when his sentence concluded.[5]

**B. Credits Affecting Time in Prerelease Custody**

Turning to the amount of time Mr. Sacks spent in prerelease custody, as explained, the BOP moved him to an RRC in April 2024, about a year before his sentence ended on April 15, 2025. That is, the BOP granted him about a year in prerelease custody. Mr. Sacks contends that he should have received more, identifying BOP's application of his FSA credits and its treatment of his time in NRDAP as being incorrect. He also suggests that he has been denied time in prerelease custody under the SCA.

---

[5] As the Court has previously noted, *see* dkt. 11 at 2–3, it understands that, to Mr. Sacks, being moved transferred to prerelease custody—like an RRC or home confinement—may feel the same as being released from BOP custody completely at the end of his sentence of imprisonment. But, as a legal matter, being transferred to an RRC or home confinement is not the same as being released from BOP custody at the end of a sentence. Instead, when an inmate is transferred to an RRC or home confinement, he is simply serving the remainder of his sentence of imprisonment in an RRC or on home confinement and not in a prison. *See, e.g.*, 18 U.S.C. § 3624(c)(1)–(2)) (the BOP "shall, to the extent practicable, ensure that a prisoner serving a term of imprisonment spends a portion of the final months of that term . . . under conditions that will afford a reasonable opportunity to adjust and prepare for the reentry of that prisoner into the community," including home confinement and community corrections facilities); 18 U.S.C. § 3624(g)(2) (identifying home confinement and RRCs as types of prerelease custody).

As to his participation in NRDAP, Mr. Sacks argues that "there is a section of ('BOP') Policy that makes it clear that you *SHALL* get (at the least) an additional 6 months in Community Corrections in addition to whatever else time you earn if you take and successfully complete NRDAP." Dkt. 1 at 17. He offers no citation for this proposition, and the Court is unaware of any such policy. In his reply, he also points the Court to BOP Program Statement 5330.11 to support his position that he was entitled to additional time in prerelease custody based on his participation in NRDAP—specifically, up to 12 months, which is the maximum amount of prerelease custody available under the SCA. Dkt. 9 at 16–17. There are several problems with this argument. First, as Mr. Sacks admits, he did *not* complete NRDAP. He asserts that his failure to complete the program was not his fault because he was transferred and then received no response when he tried to re-enroll at his new prison. That may be so, but he identifies no legal authority suggesting that people who are unable to complete NRDAP through no fault of their own are eligible for the incentives awarded for actual completion. And, even if he had, the Program Statement does not create an absolute entitlement to 12 months in prerelease custody for those who complete NRDAP—or any entitlement at all. All it does is "strongly encourage" wardens to approve inmates for the maximum period of RRC placement. Finally, Mr. Sacks ignores the fact that he *did* receive about 12 months in prerelease custody. He appears to argue that the time available to him for completing NRDAP is in *addition* to the time available based on his FSA credits. *See* dkt. 1 at 13 ("These laws indicate that the math for the amounts of time that I should have received outside of a correctional facility were improperly calculated. Instead of rightly being pluse, plus; they were done as 'or.'" (errors in original)). But he cites no legal authority to support that position, and the Court is aware of no such authority. *See Greenbank*, 47 F.4th at 629 (perfunctory, underdeveloped, and unsupported

arguments are waived). Mr. Sacks has not shown that the BOP erred in calculating the prerelease custody time available to him based on his participation in NRDAP.

As to his FSA credits and the application of the SCA, Mr. Sacks has not rebutted the BOP's evidence that he had earned 265 days of FSA credits toward placement in prerelease custody as of the time the BOP responded to his petition and that he continued to earn more FSA credits. As explained above, assuming that he continued earning FSA credits at a rate of 15 days per month until his release, he ultimately would have earned about 325 days of FSA credits toward prerelease custody. It is undisputed, however, that the BOP gave him *more* than 325 days in prerelease custody, so he has not shown that the BOP erred in applying his FSA credits. To the extent that Mr. Sacks contends that he was entitled to 325 days in prerelease custody based on FSA credits *plus* more time under the SCA, *see*, *e.g.*, dkt. 1 at 13, he cites no legal authority to support that proposition, and the Court is unaware of any such authority. Under the SCA, the BOP is directed to ensure "to the extent practicable" that an inmates spend a portion of the final months of their term of imprisonment—not to exceed 12 months—in conditions that allow the inmate a reasonable opportunity to adjust and prepare for reentry into the community, including an RRC. 18 U.S.C. § 3624(c)(1). The BOP complied with that direction and effectively gave Mr. Sacks the maximum time available in an RRC—one year.

In summary, Mr. Sacks has not shown that the BOP erred in determining the amount of time he should spend in prerelease custody, nor has he shown that the BOP miscalculated the end date of his sentence. Thus, his habeas petition must be denied.

## IV. Conclusion

For the reasons stated above, Mr. Sacks's petition for writ of habeas corpus under 28 U.S.C. § 2241 is **dismissed with prejudice**. Final judgment will issue by separate entry.

**IT IS SO ORDERED.**

Date: 8/28/2026

Hon. Jane Magnus-Stinson, Judge
United States District Court
Southern District of Indiana

Distribution:

JEFFREY SACKS
Volunteers of America Home Confinement Program
7742 Park North Court
Indianapolis, IN 46206

Shelese M. Woods
DOJ-USAO
shelese.woods@usdoj.gov